196 So. 725

**BIRMINGHAM BAR ASS'N v. PHILLIPS & MARSH et al.**

**6 Div. 604.**

Supreme Court of Alabama.

March 28, 1940.

Rehearing Denied June 6, 1940.

Horace C. Wilkinson and Wm. S. Pritchard, both of Birmingham, for appellant.

654

W. M. Rogers, E. L. All, and W. H. Forlines, all of Birmingham, Dan Mac-Dougald, of Atlanta, Ga., Bradley, Baldwin, All & White, of Birmingham, MacDougald, Troutman & Arkwright, of Atlanta, Ga., McCorvey, McLeod, Turner & Rogers, of Mobile, Alexander A. Marks, of Montgomery, and Coleman Spain, Stewart & Davies, Mead & Moebes, Lange, Simpson, Brantley & Robinson, Herbert J. Ward, and James A. Simpson, all of Birmingham, for appellees.

BOULDIN, Justice.

Birmingham Bar Association instituted a proceeding in the Circuit Court of Jefferson County with the ultimate purpose of putting an end to the alleged practice of law in Jefferson County by unlicensed individuals, associations and corporations connected with the insurance business.

Demurrers were sustained to the petition, complaint, or bill in equity as originally filed and as amended. Because of these adverse rulings a non-suit was taken. The appeal is to review such rulings. The initial pleading was filed on the law side, summons issued by the clerk and served on the several respondents.

The numerous parties respondent or defendant, omitting one designated as "Official Respondent," are divided into three classes:

(1) "Claim Adjusting Respondents," three corporations and one individual, charged with engaging in the unlawful practice of law, separately and severally, through their officers, agents, or employees, as set out in specifications, (a) (b) (c) (d) (e) (f) (g) (h) (i) which appear in the report of the case. Specifications (J) (K) (L) and (M) added by the amended petition or complaint also appear in the report of the case.

(2) The second class of respondents is designated as "Individual Respondents," alleged to be the acting officers, employees, or agents of the "Claim Adjusting Respondents" through whom these adjust-

ment companies or bureaus are engaged in the unlawful practice of law as specified.

(3) "Accessory Respondents." These are numerous insurance companies doing business in Jefferson County, some in the fire insurance business and the like, and some in the various forms of casualty insurance. They are charged with aiding and abetting the unauthorized practice of law, separately and severally, in employing the "Claim Adjusting Respondents" and the "Individual Respondents, or one or more of them, to commit one or more of the aforesaid acts enumerated" in the specifications.

The amended prayer reads:

"The premises considered, Plaintiff prays that the defendants and each of them, separately and severally, be required to appear before this Court on such day and date as the Court may fix, then and there to show cause, if any, why they should not be adjudged guilty of unlawfully practicing law in the Tenth Judicial Circuit of Alabama, and upon being found guilty of such practice, why necessary and appropriate steps should not be taken to suppress said unlawful practice of law by the defendants in the Tenth Judicial Circuit of Alabama.

"And plaintiff prays that the Court will suppress the unlawful practice of law in the Tenth Judicial Circuit of Alabama by a declaratory judgment to the effect that the acts that the defendants are committing, which are enumerated in the specifications of this petition, constitute the unlawful practice of law; or that they be enjoined from committing the several acts enumerated in Specifications a to M, inclusive, in the petition as amended; or that they be adjudged in contempt of court and punished for committing said acts; or that an appropriate writ issue out of this Court ousting them from unlawfully practicing law in the Tenth Judicial Circuit of Alabama, and perpetually enjoining and restraining them from doing so, and from committing the acts and things enumerated in Specifications A to M inclusive, of the petition as amended.

"And plaintiff prays for such other, further, general, special and appropriate relief as justifies the Court in taking."

■ Since the amendment adopts all the averments of the original, changes the designation of parties "complainant" and "respondents" to "plaintiff" and "defendants," and recasts the prayer for relief, we treat it as a complete amended petition or complaint.

■ As begun, and in one aspect as amended, the proceeding is an adversary suit wherein the Bar Association, on behalf of members of the Bar, charge Insurance Companies and certain agencies for the adjustment of claims arising under insurance contracts, with engaging in the practice of law, thus intruding into the field of the legal profession; prays an adjudication to that effect, and injunctive or other appropriate relief to prevent the further unauthorized practice of law by respondents. They are summoned into court and called upon to plead, answer, or demur, etc. The present appeal, taken because of adverse rulings on demurrer, is bottomed on injury resulting to plaintiff from such rulings.

Whether viewed as a proceeding under the Uniform Declaratory Judgment Act, as a bill of injunction in equity, or, as in substance and effect a proceeding in the nature of quo warranto, we are of opinion there is a misjoinder of causes of action and a misjoinder of parties respondent.

Many parties, Insurance Companies engaged in the many lines of insurance, other than life insurance; adjustment bureaus and adjustment agencies set up to handle that part of the insurance business; independent adjusters, offering their services to insurers for regular or special employment, are joined in one suit on averments that separately and severally they have engaged in the practice of law in one or more of many ways set up in the numerous specifications.

Accessory respondents, and individual respondents are charged with some relation to claim adjusting respondents, but the acts constituting the alleged practice of law, the cause of action as to each party brought into court, are alleged to have been done separately and severally; and each respondent is charged with one or more of a long series of acts set out in the specifications in general terms and alleged to be the practice of law.

■ Such joinder of separate and distinct causes of action against numerous parties, combining many suits into one, wherein one defendant is wholly unconcerned with the facts as to the others, is a misjoinder of parties and causes of action in any and all proceedings at law and renders a bill in equity multifarious. That

such practice does not contribute to the administration of justice, but to delay, confusion, and oppression is the experience of jurists written into procedural law here and elsewhere. That the several defendants are charged with a violation of the same law, and are sought to be dealt with by like remedial measures is not the test. McMahen v. Western Union Telegraph Co., 209 Ala. 319, 96 So. 265; Junkins v. Lovelace, 72 Ala. 303; Ford v. Borders et al., 200 Ala. 70, 75 So. 398; Alabama Great Southern R. R. Co. v. Prouty, 149 Ala. 71, 43 So. 352; City of Mobile v. McCown Oil Co., 226 Ala. 688, 148 So. 402; Lee v. City of Birmingham, 223 Ala. 196, 135 So. 314.

Like rules obtain and for like reasons in proceedings under the Declaratory Judgment Law. Gen.Acts 1935, p. 777; Manchester v. Townshend, 109 Vt. 65, 192 A. 22, 110 A.L.R. 811; Newsum v. Interstate Realty Co., 152 Tenn. 302, 278 S.W. 56; Millard County v. Millard County Drainage Dist., 86 Utah 475, 46 P.2d 423; Greek Catholic Union v. Molchany, 86 Pittsb.Leg.J. 519.

The consolidation statute applicable to Jefferson County (Acts 1935, p. 1010) has no application to the case in hand; nor does it express a policy justifying misjoinders as here presented. Ex parte Ashton, 231 Ala. 497, 165 So. 773, 104 A.L.R. 54; Altman v. Barrett et al., 234 Ala. 234, 174 So. 293.

Reverting to the first paragraph of the amended prayer above set out, which may be taken as a request that the complaint be treated as an information upon which the court, by virtue of its inherent powers to suppress the unlawful practice of law, should, as in contempt proceedings, require the respondents to show cause why they should not be adjudged guilty of the unlawful practice of law, and why appropriate steps be not taken by injunction or by punishment for contempt for such unlawful acts.

But the same prayer sought a declaratory judgment as in an adversary suit between private parties, and, upon sustaining demurrers to such proceeding, the case was put out of court by voluntary non-suit looking to a review by appeal.

It seems to be conceded in briefs that the trial court based his ruling on procedural grounds, misjoinder and the existence of an appropriate remedy by a proceeding in the nature of quo warranto.

We have held the demurrers for misjoinder were well taken. The ruling of the trial court may be sustained on that ground alone.

But in view of the strong insistence upon the inherent power and duty of the courts to be active and vigilant in the suppression of the unlawful practice of law in view of the relation of members of the bar to the courts and to the public in the administration of justice, we deal with these questions.

It is widely held that in cases of clear flagrant practice of the law by corporations or unlicensed persons they may be summarily dealt with in contempt proceedings. The subject is quite fully treated in Rhode Island Bar Association v. Automobile Service Association, 55 R.I. 122, 179 A. 139, 100 A.L.R. 226, with annotation page 236. But these same cases, for obviously sound reasons, disfavor this procedure except in manifest and extreme cases. Our statute, Acts 1931, page 606, declares such unlawful practice a misdemeanor to be prosecuted as other misdemeanors. We refer with approval to our holding in Ex parte Thompson, 228 Ala. 113, 152 So. 229, 107 A.L.R. 671.

We are of opinion that no court should undertake through contempt proceedings to deal with these respondents en masse or separately on the basis of specifications here presented.

Elaborate briefs for appellant and for the several classes of alleged offenders present many legal questions sought to be applied in dealing with the unlawful practice of law charged in the specifications. Among them, briefly outlined, are these:

The right of insurers to conduct the insurance business in all forms and in every branch from the writing of their contracts to the adjustment and settlement of matured obligations under their contracts by investigation and negotiation through their own agencies or such agencies as they may wish to employ, looking to the legal profession for such legal advice as they may deem necessary and voluntarily engage. It may be said the law enters into and defines the obligation of every contract. All men are charged as matter of public policy with a knowledge of the law pertaining to their transactions. The legal profession, men learned in the law, licensed upon evidence of their attainments in a wide range of substantive

and procedural law, and upon evidence of good character, are invested with a franchise granted by the State. One of the major functions of the lawyer is the giving of legal advice to the layman that he may conduct his business according to law. Wise men generally look to him to draft their difficult legal documents, or give needed advice as to their form and contents.

But, is this service only required when sought? Has the citizen the right to make his own lawful contracts, to put them in form, and employ such agents as he may choose with power to act as alter ego in connection with the employer's business committed to him?

These reflections bring further inquiries:

Is there a field for the independent adjuster? If so, when does he enter the field of the legal profession? Admittedly he may not engage in the business of giving advice to his employer, nor pose as attorney at law in dealing with the insured or beneficiary of the insurance. Is he engaged in the practice of law if he does more than investigate and report the facts, or may he be empowered to do what his employer may do—adjust, settle and take releases?

These inquiries are complicated in the field of indemnity insurance, where the insurer undertakes to protect against legal liability and the like.

Other questions debated are:

Is defining the practice of law a judicial function or a legislative function or both? Is our statute, supra, defining the practice of law to be taken literally, or to be construed in some of its terms in a limited way in keeping with prior announcements on the subject? If not given effect according to its terms, is the statute void for uncertainty in one or more of its features? Is it void in that it denies to the citizen the right to engage in a lawful business without a license based upon qualifications having no reasonable relation to such business, and violative of the 14th Amendment to the Federal Constitution? Does the police power of the State enter this inquiry?

To deal with these inquiries in a case now out of court on other grounds and without error would be merely to write a treatise on abstract law, not the law applicable to the pending case, the proper scope of a judicial opinion.

Our recital of these inquiries is to give emphasis to our view that no summary procedure is to be pursued, but a procedure appropriate to this particular class of cases having the proper parties, and with all the incidents of due process of law. Such an appropriate remedy is expressly provided by our statutory action in the nature of quo warranto, a proceeding to which the State is a party.

Quo warranto was a very ancient prerogative writ directed against him who usurped an office or franchise to inquire by what authority he exercised such franchise, etc. 51 C.J. 309, § 2.

This writ was early succeeded by an information in the nature of quo warranto, likewise prerogative, in character, and having the same objectives. 51 C.J. 310, § 3.

Our statute, of long standing, is modeled upon this common law proceeding, and is now expressly extended to cases of intrusion into the legal profession, the exercise of the franchise granted by the State exclusively to those duly licensed upon evidence of their qualifications to engage in the practice of law. Code, § 9932.

This remedy "looks to the sovereign power of the state with respect to the use or abuse of franchises—which are special privileges—created by its authority, and which must, as a principle of fundamental public policy, remain subject to its sovereign action in so far as the interests of the public, or any part of the public, are affected by their usurpation or abuse. State v. Des Moines City Ry. Co., 135 Iowa 694, 109 N.W. 867, 872; State v. Street Ry. Co., 140 Mo. 539, 41 S.W. 955, 38 L.R.A. 218, 62 Am.St.Rep. 742, 748; State v. Birmingham W. W. Co., 164 Ala. 586, 51 So. 354, 27 L.R.A. (N.S.) 674, 137 Am.St.Rep. 69, 20 Ann.Cas. 951." State ex rel. Weatherly et al. v. Birmingham Water Works Co., 185 Ala. 388, 64 So. 23, 27, Ann.Cas.1916B, 166.

Our statute has extended the right to institute such proceeding to a person giving security for costs of the action. But, in such case, the action is still prerogative in character, brought in the name of the State, on the relation of such person, who becomes a joint party with the State. The giving of security for the costs of the action is the condition upon which the relator is permitted to sue in the name of the State. Without such security, he usurps the authority of the

658

State. Ex parte Talley, 238 Ala. 527, 192 So. 271.

But this is not the only method of invoking the authority of the State in the protection of franchises it has granted in the interest of the public.

"The judge of the circuit court may direct such action to be brought when he believes that any of the acts specified in the preceding section can be proved, and it is necessary for the public good." Code, § 9933.

■ Thus is committed to the judicial department the institution of such proceedings, the same authority said to have the inherent power and duty to suppress the unlawful practice of law for the public good. Circuit Judges, in the exercise of their discretion under this section, should have in mind this duty. Members of the Bar and Bar Associations are entirely within their rights in bringing to the attention of the Circuit Judges specific acts of corporations or individuals which constitute the unlawful practice of the law. The direction to bring such action is to the Solicitor as in § 9930.

The proceeding in the instant case is not to punish for past acts of the accused, but to adjudicate that they are engaging in the practice of law, thus intruding into the field of the legal profession usurping a franchise granted to those duly licensed, seeks to suppress such wrong, and restrain respondents by injunction from further engaging in such unlawful practice of the law.

This is the precise objective of proceedings in the nature of quo warranto.

The judgment in such case is first an ascertainment that the respondent is engaged and purposes to continue in the unauthorized practice of law, followed by a judgment of exclusion and prohibition to further engage therein. Robinson v. State ex rel. James, 212 Ala. 459, 102 So. 693.

■ As indicated, it is the policy of the law of Alabama that such proceedings should be had in the name of the State, and instituted in the manner designated by statute.

To sanction a private action inter partes with the same objective would operate a virtual repeal of the quo warranto statute.

We need not elaborate upon the reasons behind the public policy of requiring such proceedings by or in the name of the State. It is easy to visualize that no good could come to the legal profession or to the insurance world by private litigation wherein one party charges the other with invading his exclusive field of service, and the other counters with a charge of an attempt to invade and oust him from his lawful field of private enterprise.

■ The Declaratory Judgment Law was never intended to strike down the public policy involved. Hence, there is no occasion to rely upon our line of cases denying its application where other adequate remedy is available.

We have not overlooked Frost v. Corporation Comm. of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483, and cases of like import, to the effect that a franchise conferring a special privilege to engage in a business in which the public interest is involved, confers a property right to the licensee, which equity will protect by injunction in the absence of an adequate remedy at law. The decision is based on the fact that no adequate remedy at law was available.

■ We are dealing with the policy of this State to render adequate relief by prerogative writ in the nature of quo warranto. The weight of authority is to the effect that such remedy is exclusive, since it awards relief of like character to that sought by injunction. 51 C.J. 313, § 8; 21 C.J. 57, § 40; 19 Am.Jur. 120, § 118.

Affirmed.

All the Justices concur.

On Rehearing.

PER CURIAM.

This suit is being considered in connection with that of Bessemer Bar Association v. Fitzpatrick, post, p. 663, 196 So. 733, on original hearing involving kindred questions.

We adhere to the opinion as heretofore approved and adopted in this case, but wish to make clear the distinction between the two cases.

■ The opinion here is to be understood in connection with the facts of this case. It is not one in which a person, not a licensed lawyer, has appeared in court representing a party to a cause on trial, or otherwise holds himself out as being engaged in the practice of law. When so, he is in contempt not only of the court in which he so appears, or has territorial jurisdiction over him, but also of the high-

er court of general jurisdiction with supervisory power over that in which he thus illegally appears as fully discussed in the case of Ex parte Bessemer Bar Association, supra. In such situation the court of general jurisdiction has the power to cite him for contempt in so doing, and hear and determine the effect of his conduct in that regard. The power which thus exists in that court under those circumstances to adjudge and punish for such a contempt is not the same power which obtains in respect to one who does not so appear in court or otherwise participate in a proceeding in court representing another, and does not hold himself out as a lawyer, but who sets himself up in the pursuit of a profession having distinctive characteristics, and not thought by him to be within the purview of the legal profession. Such a person is not in contempt of any court. If he is engaged in a profession without complying with the law so applicable, the duty breached is to the State and public, not to the courts nor to an individual. For the breach of such duty, the State should be the movant. The remedy is by quo warranto. When there is a breach of duty to the public, the remedy of quo warranto is available in the name of the State by any member of the public upon a compliance with the statute. Section 9929 et seq., Code.

Application for rehearing overruled.

All the Justices concur.