Magnolia Cook and Wyndolyn Cook appeal the order of the trial court dismissing their action to enjoin The Lloyd Noland Foundation, Inc. ("Foundation, Inc."), from selling Lloyd Noland Hospital to Tenet Healthcare, Inc., and to redress other alleged misconduct by Foundation, Inc., or its trustees. District Attorney Sam Russell appeals the order of the trial court dismissing his complaint in intervention in an action filed by the City of Fairfield against Foundation, Inc.
On August 6, 1951, the Tennessee Coal, Iron and Railroad Company created an "irrevocable public charitable trust" by transferring certain assets to the seven trustees of "an unincorporated society" known as "The Lloyd Noland Foundation Society." The trust instrument provided: "All assets and property of the trust estate herein created, all additions thereto or substitutions therefor, the proceeds of any sales or other dispositions thereof, and all income therefrom, shall constitute the trust properties and shall be known as `The Lloyd Noland Foundation.'" The trust instrument further provided:
 "(3) Said above-named trustees now constitute the entire membership of the unincorporated society known as `The Lloyd Noland Foundation Society'. If *Page 85 
 the `The Lloyd Noland Foundation Society' should be incorporated under the laws of the State of Alabama as a non-profit corporation with the same charitable objects, purposes and powers herein stated, said trustees are hereby authorized and empowered by a majority vote of said trustees to transfer and assign the assets of the trust estate created hereunder to such non-profit corporation as successor trustee by instrument providing that such trust estate shall forever be devoted and used for one or more of the charitable uses and purposes herein stated, provided:
 "(a) The original trustees of said non-profit corporation shall be the trustees above named or their successors;
 "(b) Said corporation shall have the same powers set out above for the trustees of said trust estate and subject to the same limitations above provided for said trustees;
 "(c) Successors to the trustees of said non-profit corporation shall be selected in accordance with the provisions made in the next succeeding section hereto for the selection of successor trustees of the said society and of the trust estate hereby created."
On August 29, 1951, the seven trustees of "The Lloyd Noland Foundation Society" incorporated "The Lloyd Noland Foundation, Inc.," a nonprofit corporation ("Foundation, Inc."), in accordance with the requirements of the trust instrument.
On May 26, 1989, at a regular meeting, the trustees of Foundation, Inc., voted to amend and to restate the articles of incorporation under the Alabama Nonprofit Corporation Act, § 10-3A-1 through-225, Ala. Code 1975. On June 6, 1989, the trustees "restated" the articles of incorporation of Foundation, Inc., in accordance with § 10-3A-84, Ala. Code 1975, a provision of the Alabama Nonprofit Corporation Act. In October 1996, upon a vote of the trustees, Foundation, Inc., sold Lloyd Noland Hospital to Tenet Healthcare.
On June 23, 1997, Magnolia Cook and Wyndolyn Cook sued Foundation, Inc., and Tenet Healthcare and asked the trial court to enjoin permanently the sale of Lloyd Noland Hospital to Tenet Healthcare or any other for-profit corporation; to require a full accounting of any and all transactions between Foundation, Inc., and Tenet Healthcare; to do equity and to prevent unjust enrichment of any person or corporation "at the expense of the charitable purposes for which the Foundation[, Inc.,] exists"; to monitor the relationship between Foundation, Inc., and Tenet Healthcare to prevent future efforts by them "to alter the charitable purposes for which the Foundation, Inc.[,] was created"; and to transfer "the assets of the Foundation[, Inc.,] to Jefferson County, Alabama[,] for the operation of its Cooper Green Hospital." Foundation, Inc., moved to dismiss the action on the ground that the Cooks lacked standing to sue.
On March 3, 1998, the City of Fairfield; Larry Langford, mayor of the City of Fairfield; the City of Bessemer; and Quitman Mitchell, mayor of the City of Bessemer, sued Foundation, Inc., and various fictitious parties. They alleged that, since the sale of Lloyd Noland Hospital, the trustees of Foundation, Inc., had engaged in acts of waste and improper expenditure. They asked the trial court to distribute the assets of Foundation, Inc., to the residents of the City of Fairfield. Thereafter,Sam Russell, as an individual and as the District Attorney for JeffersonCounty, Bessemer Division, together with various parties who are not parties to this appeal, filed complaints in intervention. The distinguishing feature of District Attorney Russell's intervention is that, for one of his *Page 86 
claims, he invoked the Quo Warranto Act, § 6-6-540 et seq., Ala. Code 1975, and sought the dissolution of Foundation, Inc. After the trial court granted the interventions, Foundation, Inc., moved to dismiss the claims of the interveners on the ground that they too lacked standing to sue. The trial court consolidated the Cooks' action with the other actions and stayed all the actions pending mediation. The cases remained stayed for months.
After a status conference, the trial court lifted the stay. Some plaintiffs and some interveners voluntarily dismissed, with prejudice, their claims against Foundation, Inc., and Tenet Healthcare. During this time, the Attorney General rejected the Cooks' request that he take action against Foundation, Inc. Thereafter, after a hearing, on January 31, 2000, the trial court dismissed the claims of the Cooks and the City of Fairfield. The trial court reasoned, in pertinent part:
 "The Plaintiffs lack standing under the Alabama Nonprofit Corporation Act, Ala. Code § 10-3A-1 et seq. This act is not elective and is mandatory to all nonprofit corporations. Only specially enumerated persons may challenge a decision to sell or transfer real or personal property by a nonprofit corporation. These persons are (A.) a proceeding by a member or director against the corporation (B.) in a proceeding by the corporation, whether representative, or through a receiver trustee or other legal representative, or through members in a representative suit, against the office[r]s or directors of the corporation for exceeding their authority and (c) in a proceeding by the Attorney General, as provided in this chapter, to dissolve the corporation, or in a proceeding by the Attorney General to enjoin the corporation from performing unauthorized acts, or in any other proceeding by the Attorney General. Ala. Code § 10-3A-3 (1994 rep vol).
 "As such the plaintiffs are not one of the listed persons or entities authorized to bring suit under the Alabama Nonprofit Corporation Act. The Act therefore being mandatory calls for the dismissal of the action.
 "The common law principles of standing do not apply and the plaintiffs have no special interest different from that of the general public. They have no standing to institute or maintain a suit to enforce a public charitable trust. [Stallworth] v. Andalusia Hospital, Inc., 470 So.2d 1158 (Ala. 1985)."
Thereafter, in an order clarifying its January 31, 2000, order, the trial court stated, in pertinent part: "In dismissing these consolidated cases, the Court dismissed each and every claim and amended claim, of all plaintiffs, including the intervener plaintiffs, against all defendants based on the grounds raised in defendants' motions." The City of Fairfield and District Attorney Russell filed post-judgment motions, which the trial court heard and denied.
On appeal, the Cooks contend that they, as beneficiaries of the irrevocable charitable trust, have standing to bring an action to enforce the trust. Neither the original trust instrument nor either corporate charter, initial or restated, designates the Cooks, by name or class, as beneficiaries. Foundation, Inc., contends that § 10-3A-21, Ala. Code 1975, deprives the Cooks of standing to sue to enforce the charitable trust.
The Cooks rely on Jones v. Grant, 344 So.2d 1210, 1212 (Ala. 1977), wherein this Court held that the beneficiaries of a charitable trust "have a right to maintain a suit to enforce the trust." However, for trusts incorporated as nonprofit corporations, the enactment of the Alabama Nonprofit Corporation *Page 87 
Act, §§ 10-3A-1 through 10-3A-225, Ala. Code 1975, in 1984 superseded that right as recognized by Jones, supra. See Carpenter v. McCart,272 Ala. 471, 131 So.2d 856 (1961), and McAdory v. Jones, 260 Ala. 547,71 So.2d 526 (1954). The Alabama Nonprofit Corporation Act applies to all corporations organized under the Act and to all "nonprofit corporations heretofore organized under any act hereby repealed, for a purpose or purposes for which a corporation might be organized under this chapter." § 10-3A-3(a)(1) and (2). Section 10-3A-84 of the Act provides for the restatement of articles of incorporation under the Act. "Upon the filing of the restated articles of incorporation, the restated articles of incorporation shall become effective and shall supersede the original articles of incorporation and all amendments thereto." § 10-3A-84(d). The Act further provides:
 "No act of a corporation and no conveyance or transfer of real or personal property to or by a corporation shall be invalid by reason of the fact that the corporation was without capacity or power to do such act or to make or receive such conveyance or transfer, but such lack of capacity of power may be asserted:
 "(1) In a proceeding by a member or director against the corporation to enjoin the doing or continuation of unauthorized acts, or the transfer of real or personal property by or to the corporation. . . .
 "(2) In a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through members in a representative suit, against the officers or directors of the corporation for exceeding their authority.
 "(3) In a proceeding by the Attorney General, as provided in this chapter, to dissolve the corporation, or in a proceeding by the Attorney General to enjoin the corporation from performing unauthorized acts, or in any other proceeding by the Attorney General."
§ 10-3A-21 (emphasis added). Section 10-3A-21 applies to Foundation, Inc. § 10-3A-3(a)(1) and (2). Section 10-3A-21 does not authorize the Cooks to sue Foundation, Inc., to enjoin the sale of Lloyd Noland Hospital. Although § 10-3A-21 authorizes the Attorney General to sue Foundation, Inc., to enjoin the sale of Lloyd Noland Hospital, the Attorney General refused to bring such an action. Thus, the Act forecloses the Cooks' attempts to enjoin the sale of the hospital, and the trial court properly dismissed that aspect of the Cooks' action on the ground of lack of standing. See Stallworth v. Andalusia Hosp., Inc.,470 So.2d 1158 (Ala. 1985).
The Cooks further complain of acts by Foundation, Inc., and its trustees other than the sale of the hospital and seek relief other than enjoining that sale. Their complaint does not reveal any recognizable standing to sue upon these other claims, and the Cooks cite no authority for such standing. Thus, the dismissal of these other claims is valid.
District Attorney Russell contends that the Quo Warranto Act, §§6-6-590 et seq., Ala. Code 1975, grants him standing to sue to dissolve Foundation, Inc., by way of his complaint in intervention in the action filed by the City of Fairfield. Specifically he contends that §10-3A-21 and § 10-3A-146 cannot by implication repeal the Quo Warranto Act. Foundation, Inc., contends that § 10-3A-21 and §10-3A-146 control the dissolution of a nonprofit corporation and provide an adequate remedy. *Page 88 
Section 6-6-590 of the Quo Warranto Act provides, in pertinent part:
 "(a) An action may be commenced under this article, in the name of the state, against the offending corporation, on the information of any person for the purpose of vacating the charter or annulling the existence of any corporation, other than municipal, whenever such corporation:
 "(1) Offends against any of the acts creating, altering or renewing such corporation;
 "(2) Violates the provisions of any law, by which such corporation forfeits its charter, by abuse of its powers;
 "(3) Has forfeited its privileges or franchises by failure to exercise its powers;
 "(4) Has done or omitted any act which amounts to a surrender of its corporate rights, privileges and franchises; or
 "(5) Exercises a franchise or privilege not conferred on it by law.
 "(b) The judge of the circuit court, whenever he believes that any of the acts or omissions specified in subsection (a) of this section can be proved and it is necessary for the public good, must direct the district attorney to commence an action, or an action may be commenced without the direction of the judge on the information of any person giving security for the costs of the action, to be approved by the clerk of the court in which the action is commenced." (Emphasis added.)
"`In this state quo warranto is a statutory proceeding and to be maintained it must meet the requirements of the statute as to parties and procedures.'" Brannan v. Smith, 784 So.2d 293, 295 (Ala. 2000) (quotingState ex rel. Norrell v. Key, 276 Ala. 524, 525, 165 So.2d 76, 77
(1964)). "The giving of security for the costs of the litigation `is a condition on which the right to proceed in the name of the State is given to individuals.' . . . Otherwise stated, it `is a condition precedent tothe jurisdiction of the court.'" Brannan, 784 So.2d at 297 (quoting Stateex rel. v. Lauten, 256 Ala. 559, 561, 56 So.2d 106, 106-07 (1952)).
"The implied repeal of a statute by another statute is not favored by the courts and will be found only when the two statutes are so repugnant to, or in such conflict with, one another that it is obvious that the Legislature intended to repeal the first statute." Anniston UrologicAssocs., P.C. v. Kline, 689 So.2d 54, 59 (Ala. 1997). See also City ofTuscaloosa v. Alabama Retail Ass'n, 466 So.2d 103 (Ala. 1985).
Since 1852 the Quo Warranto Act has granted a right of action to dissolve an offending corporation to district attorneys and to members of the general public who bear no legally recognized relationship to the corporation. See § 6-6-590 and the annotations following § 6-6-590. This Act, with this right of action, has been successively reenacted in all of the Codes of this State adopted since the original enactment, including all of the Codes that have included or reenacted §10-2B-14.30 of the Alabama Business Corporation Act and § 10-3A-146
of the Alabama Nonprofit Corporation Act, which grant essentially the same right of action to the Attorney General, a shareholder, and a creditor against a business corporation, or to the Attorney General only against a nonprofit corporation. In other words, the right of district attorneys and members of the general public to dissolve a corporation pursuant to the Quo Warranto Act has coexisted historically with the right of specified citizens and the Attorney General to dissolve a corporation on similar or essentially the same grounds pursuant to either the Business Corporation Act or the Nonprofit *Page 89 
Corporation Act. The Legislature can, and sometimes does, grant the same right of action to different classes, as the Business Corporation Act does within itself for corporate dissolution. § 10-2B-14.30. Our Constitution does not require that such concurrent standing to sue be granted in a single act or statute. Nor does our Constitution prohibit our Legislature from granting standing to the different classes by successive or different acts or statutes.
Neither the Business Corporation Act nor the Nonprofit Corporation Act, nor any amendment to either, contains any repealer text directed to the Quo Warranto Act. The right of action to sue for dissolution of an offending corporation serves a distinct and rational purpose in each act. The Quo Warranto Act is not so repugnant or contrary to either the Business Corporation Act or the Nonprofit Corporation Act "that it is obvious that the Legislature intended to repeal the first statute."Anniston Urologic Assocs., P.C., 689 So.2d at 59. Thus, the Quo Warranto Act remains in full force and effect.
District Attorney Russell's complaint in intervention not only invokes the Quo Warranto Act but also tracks it for the allegations against Foundation, Inc. The trial court dismissed the complaint in intervention upon a Rule 12(b)(6), Ala.R.Civ.P., motion to dismiss for "failure to state a claim upon which relief can be granted."
 "The appropriate standard of review under Rule 12(b)(6) is whether, when the allegations of the complaint are viewed most strongly in the pleader's favor, it appears that the pleader could prove any set of circumstances that would entitle [him] to relief. In making this determination, this Court does not consider whether the plaintiff will ultimately prevail, but only whether [he] may possibly prevail. We note a Rule 12(b)(6) dismissal is proper only when it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief."
Nance v. Matthews, 622 So.2d 297, 299 (Ala. 1993) (citations omitted). This standard invalidates the dismissal of the quo warranto claim for dissolution in District Attorney Russell's complaint in intervention.
Nobody but District Attorney Russell has sued to dissolve Foundation, Inc. Section 6-6-590 conditions his standing to sue in his officialcapacity upon, first, an "information of any [other] person for the purpose of" dissolving Foundation Inc., filed in the circuit court and, second, an order by the circuit court "direct[ing] the district attorney to commence an action." Neither condition has been satisfied. Russell's complaint, however, may be interpreted as his information filed in circuit court by him in his individual capacity to obtain a court order directing a district attorney, not necessarily Russell himself, "to commence an action." § 6-6-590. This section does not require security for the costs of this initial filing. Security for costs will be required of Russell only if the circuit court, after receiving such evidence as the parties may submit, refuses to "direct . . . [an appropriate] district attorney to commence an action." Then, to proceed without such a court order, Russell would need to "giv[e] security for the costs of the action." § 6-6-590(b).
Therefore, the trial court erred in dismissing Russell's quo warranto claim to dissolve Foundation, Inc. Russell's claims on theories other than quo-warranto-for-dissolution were validly dismissed for lack of standing for the same reasons applicable to the Cooks' claims.
Accordingly, we affirm the judgments of the trial court dismissing the Cooks' action *Page 90 
and all of District Attorney Russell's claims except his quo warranto claim. We reverse that aspect of the judgment of the trial court dismissing Russell's quo warranto claim and remand the cause for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Moore, C.J., and Houston, Lyons, and Stuart, JJ., concur.
Woodall, J., recuses himself.